J-S52010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KAY LOUISE BRYAN, | : | |
| | : | |
| Appellant | : | No. 1688 MDA 2016 |

Appeal from the Judgment of Sentence August 30, 2016
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s):  CP-36-CR-0003885-2015

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 31, 2017**

Kay Louise Bryan ("Bryan") appeals from the judgment of sentence imposed following her conviction of one count of false statements under the Public Welfare Code.  ***See*** 62 P.S. § 481.  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  ***See*** Trial Court Opinion, 12/19/16, at 1-4.

On appeal, Bryan raises the following question for our review:

I. Was the Commonwealth's evidence insufficient to establish beyond a reasonable doubt that [Bryan] was the person who applied for and received benefits from the Department of Public Welfare [("the Department")[1]], and that she received wages from K[m]art, which she failed to report, during the time she

---

[1] Although named the Department of Public Welfare at the time of Bryan's violation, the Department has since been renamed the Department of Human Services, effective November 24, 2014.  ***See*** 62 P.S. § 103.

was receiving benefits from the Department []?

Brief for Appellant at 5 (footnote added).

Bryan argues that the evidence was insufficient to establish that she was the person who applied for and received benefits from the Department, and who failed to report wages received from Kmart. *Id.* at 14. Bryan claims that no witnesses were able to identify her as the person who applied for assistance through the Department. *Id.* at 16. Specifically, Bryan asserts that there was no testimony that her signature matched the signature on the application for cash assistance, or regarding her date of birth, social security number, or address. *Id.* at 17-18. Bryan also argues that the Commonwealth did not present evidence that she failed to report her income. *Id.* at 18-19.

In its Opinion, the trial court set forth the relevant law, considered Bryan's claim, and concluded that it lacks merit. *See* Trial Court Opinion, 12/19/16, at 5-8. We agree with the trial court's conclusion that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to support Bryan's conviction. We therefore affirm on the basis of the trial court's Opinion for the purpose of this appeal. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
                                        :
        v.                         :       No. 3885-2015
                                          :
KAY LOUISE BRYAN             :

**O P I N I O N**

BY: WRIGHT, J.                                 December 19, 2016

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. In her statement, Defendant Kay Louise Bryan alleges that the evidence the Commonwealth presented against her was insufficient to sustain Defendant's conviction for fraudulently obtaining public assistance. (Statement of Errors Complained of on Appeal, Nov. 4, 2016). However, a review of the record and applicable law demonstrates that Defendant's claims lack merit, and therefore, her appeal should be dismissed.

**BACKGROUND**

The underlying case was initiated pursuant to a Private Criminal Complaint filed by the Pennsylvania Office of Inspector General. (Private Criminal Complaint, Dec. 4, 2013). The Complaint alleged that Defendant received wages from K-Mart Corporation "during the period of December 5, 2011 through July 30, 2012, in the gross amount of $5,908.63," that Defendant did not report this income to the Department of Public Welfare as required by law, that she had been previously advised by the Department of Public Welfare that such reporting was required, and by not reporting this income,

1

APPENDIX B

Defendant received $1,775.66 in Cash assistance to which she was not legally entitled. Id. Subsequently, Defendant was charged under 62 P.S. § 481 for willfully misrepresenting the amount of her household income from December 5, 2011 to July 30, 2012. (Information, Sept. 9, 2015). Defendant's jury trial took place on August 29–30, 2016, during which the Commonwealth elicited testimony from three witnesses. See generally, (N.T. Jury Trial Vol. I–II).

The Commonwealth's first witness was Ian Radcliff, a former income maintenance caseworker at the Lancaster County Assistance Office who assisted Defendant with her application for benefits. (N.T. Vol I., Aug. 29, 2016, at 56:20–57:5). Mr. Radcliff testified that his job consisted mainly of interviewing "applicants for welfare benefits" and determining "their eligibility." (Id. at 57:3–5). While Mr. Radcliff was not able to recall interviewing Defendant specifically, he explained that he had interviewed "hundreds, if not a thousand" applicants, and that he used the same interview process habitually with each new applicant as part of department policy. (Id. at 57:12, 62:20–63:7). Mr. Radcliff also described that interview process, explaining that at each interview, he would go "page-by-page" with the applicant over a fourteen-page document called the "Form PA 600." (Id. at 57:15–60:6). He also stated that he would follow this procedure "every time" and that "there could be no exception to that." (Id. at 62:20–63:7). Mr. Radcliff further testified that, as part of the process, applicants were required to sign Form PA 600, and that the Form PA 600 presented at trial contained Defendant's signature. (Id. at 62:11–12, 63:8–12); (Comw. Ex 1.). The signed form was entered into evidence and became part of the record. (N.T. Vol I., Aug. 29, 2016. at 114:1–11) (Comw. Ex. 1). The assistant district attorney also asked Mr. Radcliff

2

specifically about the part of the Form PA 600 where the applicant's rights and responsibilities were explained, asking Mr. Radcliff read to read the portion of the Form describing an applicant's responsibilities for reporting changes in income. (Id. at 59:19–61:24). Mr. Radcliff read the following portion of the Form aloud for the jury (in relevant part):

> For cash assistance . . . you must report changes in . . . new unearned income . . . . If you have no earned income, you must report new employment or new income from self-employment. If you have earned income, you must report if your gross monthly earned income increases by more than $100 than the estimated gross monthly earned income used to determine your benefit.

(Id. at 60:17–61:6).

The Commonwealth's second witness was Kimberly McMahon, an income maintenance caseworker assigned to the Overpayment Unit at the Department of Human Services. (Id. at 78:10–21). Ms. McMahon testified as to the process used by the Overpayment Unit to determine whether someone received wages greater than the allotted amount for the benefits received. (Id. at 79:11–15). Ms. McMahon explained that process, and how it indicated that Defendant worked and received wages between the dates of December 5, 2011 and July 30, 2012. (Id. at 80:10–81:25, 83:11–84:2). Ms. McMahon further stated that while Defendant had money deposited into her cash assistance account during this period, Defendant was "actually eligible for zero amount of cash assistance benefits." (Id. at 86:16–88:11). Additionally, through Ms. McMahon, the Commonwealth introduced "The Work Number" documents, which indicate the number of hours Defendant worked and the compensation Defendant received while receiving cash assistance. (Id. at 81:2–9); (Comw. Ex. 3). Through Ms. McMahon, the Commonwealth also introduced its Exhibit 4, which lists the monthly wages received by

3

Defendant for the time period in question. (Id. at 83:9–13); (Comw. Ex. 4). Ms. McMahon's also specifically testified that, as indicated by Exhibit 4, each of the bi-weekly payments Defendant received during the months in question were over $215. (Id. at 83:18–84:2). Both Exhibits 3 and 4 were moved into evidence. (Id. at 114:1–11).

The Commonwealth's final witness was Richard Barr, an investigator for the Department of Human Services Bureau of Programming and Integrity. (Id. at 94:8–25). Mr. Barr testified that he was previously employed by the Office of Inspector General, where he "investigated and prosecuted welfare fraud." (Id. at 95:1–4). Mr. Barr went on to explain the process of investigating welfare fraud, detailing his investigation of Defendant in this case, and how the investigation led him to file the criminal complaint against Defendant. (Id. at 95:5–104:19).

After the trial, the jury quickly reached a unanimous verdict, finding Defendant guilty of fraudulently obtaining public assistance between the amounts of $1,500 and $2,999. (N.T. Jury Trial, Vol. II, Aug. 30, 2016, at 151:20–152:4).[1] Pursuant to the sentencing guidelines, I sentenced Defendant to pay $1,775.66 in restitution, and to one year of probation, permitting unsupervised probation after the first probation appointment. (Id. at 155:8–157:10). Defendant filed a timely notice of appeal, a timely concise statement thereafter, and the Commonwealth filed a timely response. (Notice of Appeal, Oct. 12, 2016); (Pa.R.A.P. Order, Oct.14, 2016); (Statement of Errors Complained of on Appeal, Nov, 4, 2016); (Resp. to Deft.'s Statement of Errors Complained of on Appeal, Nov. 14, 2016).

---

[1] Violations of 62 P.S. § 481 receive different grades depending on the amount of public assistance illegally obtained. Defendant's conviction on the amount of $1,500–$2,999 is classified as a Misdemeanor of the first degree. 62 P.S. § 481.

## DISCUSSION

Under Section 481(a) of the Public Welfare Code, a person commits welfare fraud if she (1) willfully; (2) secures "assistance."[2] (3) by way of making a false statement or misrepresentation, failing to disclose a material fact regarding eligibility, or by other fraudulent means.[3] 62 P.S. § 481(a).

In Defendant's Statement, Defendant challenges the sufficiency of the evidence, averring that (1) the Commonwealth presented "no evidence identifying the defendant as the person who applied for and received benefits from the Department of Public Welfare," nor (2) any evidence "identifying the defendant as the person who received wages from K-Mart" while she was receiving the benefits. (Statement of Errors Complained of on Appeal, Nov. 4, 2016). Further, (3) Defendant avers that the Commonwealth also failed to present any evidence showing that Defendant "willfully failed to disclose a material fact regarding her eligibility" for the benefits in question. Id. Our Superior Court has articulated succinctly the applicable standard for such a challenge:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every

---

[2] The definition of "Assistance" under the Public Welfare Code includes "money." 62 P.S. § 402.
[3] 481(a), in full, reads as follows: "Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a willfully false statement or misrepresentation, or by impersonation or by willfully failing to disclose a material fact regarding eligibility or other fraudulent means, secures, or attempts to secure, or aids or abets or attempts to aid or abet any person in securing assistance, or Federal food stamps, commits a crime which shall be graded as provided in subsection (b)."

5

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Karns, 50 A.3d 158, 161 (Pa. Super. 2012) (case citation omitted), appeal denied, 65 A.3d 413 (Pa. 2013); See also Commonwealth v. Cousar, 928 A.2d 1025, 1031–33 (2007) (similarly articulating this standard).

Here, the evidence at trial was sufficient for the jury to conclude beyond a reasonable doubt that Defendant's actions met every element of 62 P.S. § 481(a).

First, Defendant's argument that no evidence was presented indicating she was the perpetrator is completely meritless. While it is true that no witness could recall speaking to Defendant, and that no witness directly identified defendant in court, these facts alone are not dispositive. To the contrary, all three Commonwealth witnesses presented circumstantial evidence as to Defendant's identity:

The Commonwealth's first witness, Mr. Radcliff, testified that Defendant's name was signed on the Form PA 600, and that it was his unwavering practice to interview every applicant. (N.T. Vol I, Aug. 29, 2016, at 62:11–63:7). Moreover, Defendant's signed name appears on the Form PA 600 at least seven times, and Defendant's social security number appears on the document. (Comw. Ex. 1). This testimony, Defendant's multiple signatures, and Defendant's social security number provided sufficient circumstantial evidence to prove that Defendant was the person who applied for the benefits.

As to the identification of Defendant as the recipient of the wages from K-Mart, the Commonwealth's second witness, Ms. McMahon, testified that the wages on

6

Commonwealth's Exhibit 4 were the "wages that were paid to Ms. Bryan . . . ." (Id. at 83:9–12). (Comw. Ex. 4). Ms. McMahon also testified that the form indicates Defendant was employed at the Ephrata K-Mart during the time period in question. (Id. at 71:2–4); (Comw. Exhibit 4). Exhibit 4 also contains Defendant's social security number. (Comw. Exhibit 4). The Commonwealth's final witness, Mr. Barr, also corroborated the preceding testimony indicating Ms. Bryan was the person who committed welfare fraud—Mr. Barr stated that he reviewed the documents for this case, and that Defendant's "Work Number Documents" indicated Defendant was working during the period in question. (N.T. Vol I, Aug. 29, 2016, at 97:16–98:9); (Comw. Ex. 3). Mr. Barr also indicated that he reviewed Defendant's PA Form 600 as part of his investigation; Mr. Barr explained that the Form would have indicated to Defendant's case worker that Defendant was out on leave during the period in question, even though she was actually working at K-Mart. This, and the other documentation, thereby led Mr. Barr to file the criminal complaint in this case. (N.T. Vol I, Aug. 29, 2016, at 99:20–104:13).

Regarding Defendant's other claim, while Defendant made the well-reasoned argument at trial that the jury should doubt whether Defendant acted willfully, as none of the witnesses could personally remember their interactions with Defendant, the circumstantial evidence, viewed in the light most favorable to the Commonwealth, was clearly sufficient to draw such a conclusion. (N.T. Vol. II, Aug. 30, 2016 at 129:10–17). The testimony of the Commonwealth's first witness, Mr. Radcliff, indicated that Defendant was read her rights and obligations, and that she signed the form verifying that she was aware of those rights and obligations, including the obligation to report any change in income. Despite this awareness, the testimony of the Commonwealth's

7

second and third witnesses indicated that after filling out and going over her obligations on the form, Defendant still chose to work at K-Mart, received income therefrom for several months, and failed to report that income while still receiving cash assistance. It required no great leap of logic for the jury to conclude that this failure to report income was willful.

Therefore, notwithstanding Defendant's arguments as to the sufficiency of the evidence, I find that the Commonwealth submitted sufficient evidence for the jury to find Defendant guilty beyond a reasonable doubt. Accordingly, I enter the following:

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA          :
                                      :
          v.                          :          No. 3885-2015
                                      :
KAY LOUISE BRYAN                      :


## ORDER

BY: WRIGHT, J.

AND NOW, this 19th day of December, 2016, the Court hereby submits this

Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

BY THE COURT:

JEFFERY D. WRIGHT
JUDGE

Attest: Jacquelyn E. Pfursich
        Clerk of Courts

Copies to:

Eric S. Neiman, ADA
Courtney M. Monson, APD

2016 DEC 19 AM 9: 00
LANCASTER COUNTY, PA
CLERK OF COURTS

9